UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| INFIDELS, LLC, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )     No. 3:22-cv-00391 |
| | ) |
| ISABELLA CASILLAS GUZMAN, et al., | ) |
| | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Pending before the Court is Defendants' Motion to Dismiss the Second Amended Complaint (Doc. No. 28). Six months after the motion was fully briefed, (Doc. Nos. 29, 32), Plaintiffs moved for leave to amend their operative pleading. (Doc. No. 40). But the Second Amended Complaint fails to demonstrate Plaintiffs' right to bring this lawsuit, and Plaintiffs' proposed Third Amended Complaint does not cure these deficiencies. Thus, the Court will grant Defendants' Motion to Dismiss the Second Amended Complaint (Doc. No. 28), and deny Plaintiff's Motion for Leave to Amend Their Second Amended Complaint (Doc. No. 40) as futile.

## I.     FACTUAL ALLEGATIONS AND BACKGROUND[1]

As part of a greater effort to provide relief across the country due to the COVID-19 pandemic, Congress appropriated $28.6 billion included in the American Rescue Plan Act to create the Restaurant Revitalization Fund, Pub. L. No. 117-2, § 5003 (the "RRF" or "Fund"). (Doc. No. 27 ¶¶ 19, 21, 23). The Small Business Administration (the "SBA"), a federal agency, processed

---

[1] The Court relies on the relevant factual allegations from the Second Amended Complaint (Doc. No. 27) and assumes they are true for purposes of ruling on the instant motion. See *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

applications and distributed the Fund, and, during the first 21 days the Fund operated, the SBA was required to:

> prioritize awarding grants to eligible entities that are small business concerns owned and controlled by women (as defined in section 3(n) of the Small Business Act (15 U.S.C. 632(n))), small business concerns owned and controlled by veterans (as defined in section 3(q) of the Small Business Act (15 U.S.C. 632(q))), or socially and economically disadvantaged small business concerns (as defined in section 8(a)(4)(A) of the Small Business Act (15 U.S.C. 637(a)(4)(A))).[2]

Pub. L. No. 117-2, § 5003(c)(3)(A).  After the 21-day period (the "Priority Period"), applications were to be awarded to eligible entities in the order in which they were received.  Id. at §5003(c)(1).

As one would expect, demand for RRF awards was significant, and, well-before the Priority Period ended, the SBA had received requests for far more money than was allocated to the Fund.  (Doc. No. 27 ¶¶ 24–26).  On June 30, 2021, the SBA announced that the RRF had been exhausted and closed the Fund.  (Id. ¶¶ 29–30).  In the brief period that the RRF was open, it had provided awards to 105,000 restaurants, including 1,163 in Tennessee.  (Id. ¶ 31).

Plaintiff Embers Ski Lodge, LLC ("Embers"), a themed bar and restaurant located in Nashville's 12South neighborhood, received an $204,098.00 RRF award.[3]  (Doc. Nos. 27 ¶ 3; 29

---

[2] Under the Small Business Act, a "socially and economically disadvantaged small business concern" is any small business concern "which is at least 51 per centum unconditionally owned by (I) one or more socially and economically disadvantaged individuals; (II) an economically disadvantaged Indian tribe . . . ; or (III) an economically disadvantaged Native Hawaiian organization."  15 U.S.C. 637(a)(4)(A).  The Small Business Act goes on to describe "socially disadvantaged individuals" as "those who have been subject to racial or ethnic prejudice or cultural bias because of their identity as a member of a group without regard to their individual qualities," 15 U.S.C. 637(a)(5), and "economically disadvantaged individuals" as "those socially disadvantaged individuals whose ability to compete in the free enterprise system has been impaired due to diminished capital and credit opportunities as compared to others in the same business area who are not socially disadvantaged."  15 U.S.C. 637(a)(6).

[3] Though the Seconded Amended Complaint alleges that Embers received no award, (Doc. No. 27 ¶ 70), Plaintiffs later acknowledge that Embers "received its RRF grant in the amount of $204,098.00 on Wednesday, November 23, 2022 from the Defendant SBA as part of the release and award of an additional $83 million in RRF awards to 169 RRF applicants who were allegedly at the front of the queue."  (Doc. No. 29 at 6).

2

at 6). But Embers and its owner, Plaintiff Michael Dolan, along with Dolan's other two restaurants, Plaintiffs Infidels, LLC d/b/a MAFIAoZA's, and MAFIAoZA's Franklin, LLC, now cry foul. (Doc. No. 27 ¶¶ 1–4). Dolan is not a veteran, nor is he a socially or economically disadvantaged individual as defined by the Small Business Act. (Id. ¶¶ 4, 46). However, Dolan completed RRF applications for each of his three businesses within an hour of the Funds' application portal's opening and contends that his applications would have been timely granted in full had the SBA not considered certain applications first during the Priority Period. (Id. ¶¶ 82–87). Based on the RRF guidelines, Embers would have received an additional $11,955.00, MAFIAoZA's would have received $686,694.00, and MAFIAoZA's Franklin would have received $619,427.00. (Doc. Nos. 27 ¶ 70; 29 at 6).

Thus, on May 26, 2022, Plaintiffs filed the instant lawsuit.[4] (Doc. No. 1). Dolan and his restaurants are now on their third iteration of their Complaint, (Doc. No. 27), and have winnowed their claims and requested relief. Now, only two claims remain; Plaintiffs allege that the RRF's Priority Period violated the Equal Protection Clause and Title VI of the Civil Rights Act of 1964, (compare Doc. No. 27; with Doc. No. 29 at 15), for which they request that this Court: (1) declare the RRF's Priority Period "unconstitutional because it required discrimination on the basis of race and sex[;]" (2) declare "Defendants violated [the] constitutional rights of Plaintiffs by discriminating on account of race and sex in administering the Restaurant Revitalization Fund[;]" (3) "[a]ward Plaintiffs all of the RRF funds for which they would have otherwise been entitled to receive from the SBA from the RRF program as well as any and all compensatory damages against the Defendant on behalf of the Defendant SBA[;]" and (4) award Plaintiffs costs and attorneys'

---

[4] Dolan became a plaintiff in the Second Amended Complaint. (Compare Doc. No. 27; with Doc. No. 18).

3

fees. (Doc. No. 27 ¶¶ 91–95). Plaintiffs also sought injunctive relief, (id.), but later admitted in briefing that the request "was made in error and should be dismissed." (Doc. No. 29 at 16).

Separately, Plaintiffs seek to amend their operative pleadings again. (See Doc. No. 40 (requesting leave to amend the operative pleadings)). However, by Plaintiffs' own admission, the proposed amended pleadings do not substantively alter their claims. They seek to file a fourth complaint only "to ensure the Court considers the most current factually correct pleadings available to it before considering the issues raised in Defendants' pending Motion to Dismiss." (Doc. No. 41 at 5).

## II.    LEGAL STANDARD

Courts must consider any arguments under Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") prior to any Federal Rule of Civil Procedure Rule 12(b)(6) ("Rule 12(b)(6)") challenge "since the Rule 12(b)(6) challenge becomes moot if [the C]ourt lacks subject matter jurisdiction." Houchens v. Beshear, 850 F. App'x 340, 342 (6th Cir. 2021) (citations omitted); see also Russell v. Lundergan-Grimes, 784 F. 3d 1037, 1046 (6th Cir. 2015). "A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." Cartwright v. Garner, 751 F.3d 752, 759 (6th Cir. 2014) (citations omitted). A facial attack—like the one Plaintiffs mounts here—"questions merely the sufficiency of the pleading." O'Bryan v. Holy See, 556 F.3d 361, 375 (6th Cir. 2009) (citation and quotation marks omitted). In reviewing the facial attack, courts must accept all allegations as true, id., and, when reviewing the operative pleading, look for a "short and plain statement of the grounds for the court's jurisdiction." Fed. R. Civ. P. 8(a); see also Owens v. Republic of Sudan, 531 F.3d 884, 894–95 (D.C.Cir.2008). "[C]onclusory

allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." O'Bryan, 556 F.3d at 376 (citation omitted).

## III. ANALYSIS

### A. Plaintiffs Do Not Establish Subject Matter Jurisdiction.

In their Motion to Dismiss and their supporting memoranda (Doc. Nos. 28, 28-1, 32), Defendants forward three arguments for dismissal pursuant to Rule 12(b)(1) and an additional three pursuant to Rule 12(b)(6). However, because the Court must consider those made under Rule 12(b)(1) first and finds them dispositive, it will not reach Defendants' merits-based arguments.

Defendants first argue that "Plaintiffs lack standing to seek . . . declaratory relief relating to the long-expired priority period." (Doc. No. 28-1 at 7). To have Article III standing, Plaintiffs must satisfy three elements: (1) "[P]laintiff[s] must have suffered an 'injury in fact'; (2) that injury must have been 'caused' by [D]efendant[s'] conduct; and (3) the injury must be 'redressable by a favorable decision.'" Clark v. Stone, 998 F.3d 287, 294 (6th Cir. 2021) (quoting Bearden v. Ballad Health, 967 F.3d 513, 516 (6th Cir. 2020)). But to obtain declaratory relief, Plaintiffs must also show a present ongoing harm or imminent future harm. Shelby Advocates for Valid Elections v. Hargett, 947 F.3d 977, 981 (6th Cir. 2020); see also Grendell v. Ohio Supreme Court, 252 F.3d 828, 832 (6th Cir. 2001) ("When seeking declaratory . . . relief, a plaintiff must show actual present harm or a significant possibility of future harm."). "Past exposure to illegal conduct does not in itself show a present case or controversy [required for standing when seeking declaratory relief] if unaccompanied by any continuing, present adverse effects." Beiersdorfer v. LaRose, No. 20-3557, 2021 WL 3702211, at *6 (6th Cir. Aug. 20, 2021) (quoting Lujan, 504 U.S. 555, 564 (1992)). At this early stage of litigation, this showing requires only that the operative pleading alleges

sufficient facts to support the conclusion that an ongoing or imminent future harm exists.  Blakely v. United States, 276 F.3d 853, 872 (6th Cir. 2002).

In their responsive brief, Defendants argue that they "continue to suffer a real and concrete injury by having their application considered behind the priority applications because of race and sex," (Doc. No. 29 at 16), and assert that "restaurants that submitted 'priority' applications after them have received RRF grants without regard to the Defendants processing RRF applications on the basis of when they were filed with the Defendant SBA."  (Id.).  There is no doubt that Plaintiffs suffered an injury; Vitolo v. Guzman, a case that addressed the Priority Period's constitutionality while the program operated, spells that out.  999 F.3d 353 (6th Cir. 2021) ("The injury here is 'the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit.  The government's use of racial preferences causes that injury.  And that injury is redressable by a decision ordering the government not to grant priority consideration based on the race of applicants'")).  But Plaintiffs' heavy reliance on Vitolo to establish standing for declaratory relief is misplaced.  Plaintiffs filed their first iteration of their complaint 364 days after "SBA booked the final priority applications that were funded into SBA's E-Tran system for disbursement of funds on the afternoon of May 27, 2021."  (Compare Doc. No. 1; with Doc. No. 27 ¶ 49).  And Plaintiffs specifically allege that, "[o]n June 30, 2021, SBA completed distribution of the $28.6 billion allocated to the RRG and announced that the fund was exhausted." (Doc. No. 27 ¶ 50).  This is a far cry from the situation the Sixth Circuit considered; there, the Priority Period was still in effect and the RRF still had funds.  See Vitolo, 999 F.3d at 358.  Without allegations that the Defendants continue to sideline Dolan's restaurants' applications in favor of later-filed priority applications or will do so imminently, Plaintiffs have not satisfied this most basic threshold

burden, and the Second Amended Complaint contains none. (<u>See generally</u> Doc. No. 27). Plaintiffs' request for declaratory relief must be dismissed.

Having disposed of Plaintiffs' request for declaratory relief, the Court can move past Defendants' second Rule 12(b)(1) argument. In their third and final argument for dismissal under Rule 12(b)(1), Defendants contend that "the Second Amended Complaint fails to identify an express waiver of sovereign immunity permitting the plaintiffs to obtain damages from SBA." (Doc. No. 28-1 at 9–10). As they rightly observe, (<u>see id.</u> at 9), "without a waiver of sovereign immunity, a court is without subject matter jurisdiction over claims against federal agencies or officials in their official capacities." <u>Muniz-Muniz v. U.S. Border Patrol</u>, 741 F.3d 668, 671 (6th Cir. 2013); <u>see also</u> <u>FDIC v. Meyer</u>, 510 U.S. 471, 475 (1994). This "waiver of sovereign immunity may not be implied and exists only when Congress has expressly waived immunity by statute." <u>Muniz-Muniz</u>, 741 F.3d at 671. Thus, the onus is on Plaintiffs to identify a waiver of sovereign immunity under Title VI. <u>See</u> <u>Reetz v. United States</u>, 224 F.3d 794, 795 (6th Cir. 2000) ("If [Plaintiff] cannot identify a waiver, the claim must be dismissed on jurisdictional grounds.").

Rather than identify an express waiver, Plaintiffs attempt to side-step this authority, arguing that "the Supreme Court has established an implied private right of action under Title VI, leaving it beyond dispute that private individuals may sue to address allegations of intentional discrimination." (Doc. No. 29 at 7 (internal quotation marks and citations omitted)). But whether an implied right of action exists says nothing of whether Congress expressly waived sovereign immunity to bring that cause of action against a federal agency or its officers. In other words, Plaintiffs failed to respond to Defendants' argument, and, by so doing, have abandoned their claim for damages. <u>See</u> <u>PNC Bank, Nat. Ass'n v. Goyette Mech. Co., Inc.</u>, 88 F. Supp. 3d 775, 785 (E.D. Mich. 2015) (dismissing claims that the plaintiffs failed to respond to in opposition to motion to

dismiss, noting that "[a] plaintiff abandons undefended claims.").  Where a party fails to respond to an argument in a motion to dismiss "the Court assumes he concedes this point and abandons the claim." Id. (quoting Mekani v. Homecomings Fin., LLC, 752 F. Supp. 2d 785, 797 (E.D. Mich. 2010)); see also Doe v. Bredesen, 507 F.3d 998, 1007-08 (6th Cir. 2007) (affirming the district court's conclusion that the plaintiff abandoned certain claims by failing to raise them in his brief opposing the government's motion to dismiss).  Thus, the remainder of Plaintiffs' claims will be dismissed.

     B.  The Proposed Third Amended Complaint Does Not Cure the Deficiencies in Subject Matter Jurisdiction.

Separately, Plaintiffs move to amend their complaint for a third time pursuant to Federal Rule of Civil Procedure 15(a).  (Doc. No. 40).  "Although such motions are commonly granted, a motion to amend a complaint should nevertheless be denied if the amendment would be futile." Courie v. Alcoa Wheel & Forged Prods., 577 F.3d 625, 633 (6th Cir. 2009); see also Crawford v. Roane, 53 F.3d 750, 763 (6th Cir. 1995) ("Pursuant to Ruel 15(a) of the Federal Rules of Civil Procedure, leave to amend shall be freely granted when justice so requires.  A motion to amend a complaint should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile."); see also Sevier v. Google, Inc., No. 15-5345, 2016 WL 11827920, at *1 (6th Cir. Sept. 14, 2016) (stating the same).  By Plaintiffs' own admission, their "proposed Third Amended Complaint is substantially identical to the currently operative Second Amended Complaint, except that it includes new facts relating to the delayed payment by the Defendant SBA, on November 23, 2022, of certain RRF funds only to Plaintiff Ember Ski Lodge, LLC that amends, supports or supplements the existing claims and damages asserted by the Plaintiffs in their Second Amended Complaint against the same Defendants."  (Doc. No. 41 a 2–3).

The Court has closely considered these "new facts"—many of which were already brought to this Court's attention in the briefing on Defendants' Motion to Dismiss. (Doc. Nos. 28-1, 29, 32). To the extent that the Court did not already give Plaintiffs the full benefit of their proposed amendments, see Courie, 577 F.3d at 633, the proposed Third Amended Complaint still neither gestures at an ongoing harm or imminent future harm, nor points to an express waiver of sovereign immunity. (See Doc. No. 41–1 at 4, 11, 14–16, 18–19). The amendments' incorporation into the operative pleading has no bearing on how this Court would resolve this Motion to Dismiss. Therefore, the motion is futile. See Sevier, No. 15-5345, 2016 WL 11827920, at *1 (affirming the denial of a motion to amend after the district court granted the defendants' motion to dismiss pursuant to Rule 12(b)(1) because the "proposed amended complaints could not survive a motion to dismiss."). For this reason, Plaintiffs' Motion to Amend the Second Amended Complaint (Doc. No. 40) must be denied.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss the Second Amended Complaint (Doc. No. 28) will be granted and Plaintiffs' Motion for Leave to Amend Their Second Amended Complaint (Doc. No. 40) will be denied as futile.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE